WO                                                                                      JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT
# OF ARIZONA

| | |
|---|---|
| Howard Cochran, | No. CV 18-00688-PHX-MTL (JFM) |
| Plaintiff, | |
| vs. | **ORDER** |
| Nurse Kubler, | |
| Defendants. | |

Plaintiff Howard Cochran, who is confined in the Arizona State Prison Complex (ASPC)-Eyman, Rynning Unit, brought this pro se civil rights action under 42 U.S.C. § 1983 against Carl Kubler, a nurse employed at the prison. (Doc. 1.) Before the Court is Defendant's Motion for Summary Judgment. (Doc. 26.) The Court will grant the Motion and terminate the action.

**I.     Background**

Plaintiff's claim arose during his confinement at the ASPC-Lewis prison facility in Buckeye, Arizona. (Doc. 1 at 1.) Plaintiff asserted that he suffered serious back pain, which was documented in his medical records. (*Id.* at 4.) He was assigned a kitchen job and was required to stand for long periods of time, thereby aggravating his back pain. (*Id.*) Plaintiff alleged that when he requested a medical release from his kitchen job due to his back pain, Defendant refused to provide the release. (*Id.*) As a result, when Plaintiff became unable to work due to back pain, he received disciplinary tickets for

failure to go to work. (*Id.*) On screening, the Court determined that Plaintiff's allegations stated an Eighth Amendment medical care claim against Defendant. (Doc. 7.)

Defendant filed his Motion for Summary Judgment, arguing that he was not deliberately indifferent to Plaintiff's back pain and that Plaintiff did not suffer any injury attributable to Defendant's acts or omissions. (Doc. 26.)

Plaintiff then filed a Dispositive Motion, which was construed as a Motion for Summary Judgment and was stricken by the Court because Plaintiff did not submit a separate statement of facts as required under the Local Rules of Civil Procedure. (Docs. 28–29.) The Court issued an Order with the Notice required under *Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998) (en banc), informing Plaintiff of the summary judgment requirements under Federal Rule of Civil Procedure 56 and the Local Rules and setting a briefing schedule on Defendant's Motion. (Doc. 30.) Plaintiff responded by filing what he titled a "Motion for Summary Judgment" and he attached documentary evidence, and he filed a Separate Statement of Facts. (Docs. 34–35.) Plaintiff's Motion was stricken on the grounds that it was untimely, that his Separate Statement of Facts did not reference specific admissible portions of the record, that his exhibits were improperly appended to his Motion rather than to his Statement of Facts, and that the Motion did not cite to paragraphs within the Statement of Facts and instead cited to his attached exhibits. (Doc. 36.) Plaintiff did not submit any further filings.

**II.    Consideration of Plaintiff's Filings as a Response to Defendant's Motion**

The Court must "construe pro se filings liberally," *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), and it must afford a pro se plaintiff "'the benefit of any doubt' in ascertaining what claims he 'raised in his complaint and *argued to the district court*.'" *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (emphasis in original). Specific to summary judgment briefing, the Ninth Circuit has directed that courts must "construe liberally motions papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *see Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

Although Plaintiff's Motion for Summary Judgment was untimely and properly stricken for that reason, the Motion was filed within the time provided to file a response to Defendant's Motion for Summary Judgment. (*See* Docs. 30, 34.) Plaintiff titled his filing "Motion for Summary Judgment"; however, within this filing, he specifically referred to and responded to arguments presented in Defendant's Motion for Summary Judgment, and, in support of his opposition, Plaintiff cited to attached evidence that directly refuted one of Defendant's primary claims. (Doc. 34 at 2.)

Thus, after a review of the docket and Plaintiff's filings, and in light of the above precedent, the Court finds that while Plaintiff failed to strictly comply with the procedural rules governing a separate statement of facts and attachment of exhibits, upon reconsideration, this failure is not a proper basis for striking Plaintiff's filing to the extent that it constitutes a Response and not a Motion for Summary Judgment.[1] Plaintiff's filing must be construed as a Response to Defendant's Motion, and the prior Order will be modified accordingly. *See City of Los Angeles, Harbor Div. v. Santa Monica*, 254 F.3d 882, 885 (9th Cir. 2001) ("[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient") (internal citations omitted).

Because the Court concludes that summary judgment for Defendant is warranted even when considering Plaintiff's Response and attached exhibits, Defendant is not prejudiced by his inability to file a reply in support of his Motion.

**III. Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion

---

[1] Indeed, a review of the docket shows that Defendant also improperly appended his Exhibits to his Motion instead of to his Separate Statement of Facts. (*See* Doc. 26, Exs.; Doc. 27.)

1  and identifying those portions of the record, together with affidavits, if any, that it
2  believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at
3  323.

4  If the movant fails to carry its initial burden of production, the nonmovant need
5  not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d
6  1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the
7  burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and
8  that the fact in contention is material, i.e., a fact that might affect the outcome of the suit
9  under the governing law, and that the dispute is genuine, i.e., the evidence is such that a
10 reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 250; *see
11 Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The
12 nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l
13 Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come
14 forward with specific facts showing that there is a genuine issue for trial." *Matsushita
15 Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation
16 omitted); see Fed. R. Civ. P. 56(c)(1).

17 At summary judgment, the judge's function is not to weigh the evidence and
18 determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,
19 477 U.S. at 249. In its analysis, the court does not make credibility determinations; it
20 must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.
21 *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The
22 court need consider only the cited materials, but it may consider any other materials in
23 the record. Fed. R. Civ. P. 56(c)(3). Further, where the nonmovant is pro se, the court
24 must consider as evidence in opposition to summary judgment all of the pro se litigant's
25 contentions that are based on personal knowledge and that are set forth in verified
26 pleadings and motions. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *see
27 Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).

28

## IV. Relevant Facts

At the relevant time, Plaintiff suffered serious back pain as a result of a back injury. (Doc. 1 at 4.) Plaintiff's prison medical records document that since 2015, Plaintiff was diagnosed with muscle spasms; low back pain; thoracic disc degeneration; polyosteoarthritis (joint pain/inflammation); and intervertebral disc degeneration in the lumbosacral region. (Doc. 26-2 at 3–4.) Plaintiff had a job in the kitchen working on the serving line, and this required him to stand up for long periods of time, thereby exacerbating his back pain. (Doc. 1 at 4; Doc. 35 ¶ 1.)

On June 27, 2017, Plaintiff submitted a Health Needs Request (HNR) stating "back pain hurt so bad can't stand it[,] about to drop [illegible]." (Doc. 34 at 6.) The HNR is signed by a staff member; however, in that portion of the response documenting the "plan of action," the space is empty. (*Id.*)

On July 10, 2017, Plaintiff was issued a six-month prescription for naproxen (Aleve). (Doc. 26-2 at 5.) The record does not indicate who ordered this prescription. (*See id.*)

On July 12, 2017, Plaintiff submitted another HNR informing medical that his "back hurt very, very bad." (*Id.* at 7.) The HNR is signed by a staff member, but there is no plan of action indicated. (*Id.*)

The kitchen staff told Plaintiff that the only way he could be removed from his kitchen job was to get a medical release from kitchen duty due to pain and suffering caused by standing all day. (Doc. 1 at 4.) Therefore, on July 17, 2017, Plaintiff submitted an HNR stating "I would like to be t[aken] out of the kitchen, standing up that long ha[s] my back hurting." (Doc. 34 at 5.)

In response to this HNR, Plaintiff was seen in medical that same day by Defendant. (Doc. 26-2 at 1.) In the objective notes for this encounter, Defendant wrote that Plaintiff was alert and oriented, he ambulated to medical, he was able to voice his concerns, and no acute distress was noted. (*Id.* at 2.) Defendant assessed "alteration in comfort," and in the "Plan Notes," Defendant wrote "discussed with Dr." (*Id.* at 4, 6.)

There is no record identifying this "Dr.," nor is there any record of a discussion with a provider, and there was no change to Plaintiff's medications. (*See id.* at 4–5.) The medical record documents that Plaintiff was advised to return to medical with an HNR as needed. (*Id.* at 7.)

The July 17, 2017 HNR was returned to Plaintiff, and in the "plan of action" space, it stated "DENIED." (Doc. 34 at 5.) The signature and date of the response are illegible; however, Plaintiff avers that Defendant denied the request for a release from kitchen duty. (*Id.*; Doc. 1 at 4; Doc. 34 ¶ 1; Doc. 35 ¶ 3.)

On September 15, 2017, Plaintiff submitted an HNR stating that he had lower back pain and that the pain medication—naproxen—was not working. (Doc. 26-4 at 1, 5.) In response to this HNR, Plaintiff saw Defendant. (*Id.*) There were no objective notes made in the medical record for this encounter, and Defendant assessed "alteration in comfort." (*Id.* at 2, 4.) The medical record documented that the provider was to be contacted about Plaintiff's pain medication. (*Id.* at 7.) The medical record shows no change to Plaintiff's medication. (*Id.* at 5.)

On September 20, 2017, Plaintiff submitted an HNR requesting Tylenol for back pain. (Doc. 26-6 at 1.) In response to this HNR, he saw Defendant in medical. (*Id.*) Defendant made no objective notes, and he assessed "alteration in comfort." (*Id.* at 2, 4.) Defendant documented in the plan notes "pain med"; however, the medical record shows no medication changes or additions. (*Id.* at 4–6.) The record documents that Plaintiff was advised to return to medical as needed. (*Id.* at 7.)

On October 4, 2017, Plaintiff submitted an HNR in which he wrote that he is dealing with ongoing back pain and despite being told he was going to see the provider, he had not been scheduled. (Doc. 34 at 8.) The HNR response informed Plaintiff "you are schedule[d] for an appointment." (*Id.*)

The medical records reflect that on October 11, 2017, a four-month prescription for APAP Tabs/325-Acetaminophen (Tylenol) was ordered for Plaintiff. (Doc. 26-8 at 5.) The record does indicate who prescribed this medication. (*See id.*)

On January 13, 2018, Plaintiff submitted another HNR pleading to go to pain management for his back pain because he could hardly walk and it hurt so bad. (Doc. 34 at 9.) The HNR response documented that the plan of action was "provider review." (*Id.*)

The medical records reflect that on February 1, 2018, a four-month prescription for APAP Tabs/325 (Tylenol) was reordered. (Doc. 26-8 at 5.) The record does not indicate who reordered this prescription. (*See id.*)

On February 2, 2018, Plaintiff submitted an HNR stating that his back pain was "off the chart." (*Id.* at 1.) In response to this HNR, Plaintiff saw Defendant. (*Id.*) Defendant noted that Plaintiff was alert and oriented, able to voice his concerns, ambulated to medical, and that there were no signs of acute distress. (*Id.* at 2.) Defendant assessed "alteration in comfort"; documented in the plan notes "provider review"; and advised Plaintiff to submit an HNR as needed. (*Id.* at 4, 6, 8.)

On March 8, 2018, Plaintiff submitted an HNR stating that he needs to see someone about his back pain; "I am in so much pain please." (Doc. 34 at 11.) In response to this HNR, Plaintiff saw Defendant. (Doc. 26-10 at 1.) Defendant noted that Plaintiff was alert and oriented, able to voice concerns, ambulated to medical, and that he was grimacing at times. (*Id.* at 2.) Defendant assessed "alteration in comfort," and the plan notes were "provider review." (*Id.* at 4, 6.) Defendant advised Plaintiff to submit an HNR as needed. (*Id.* at 8.)

The medical records document that on October 13, 2018, Defendant reordered a prescription for APAP Tabs/325 (Tylenol); however, this order was discontinued at the pharmacy. (Doc. 26-11 at 1, 4.)

**V.     Eighth Amendment**

To support a medical care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective

standard. First, a prisoner must show a "serious medical need." *Id.* (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059–60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096.

Even if deliberate indifference is shown, to support an Eighth Amendment claim,

the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

**VI. Discussion**

Defendant does not argue that Plaintiff's back condition and pain did not constitute a serious medical need. (*See* Doc. 26.) The medical records document Plaintiff's diagnosed and recognized conditions of back pain, muscle spasms, and disc degeneration, and the HNRs and Plaintiff's averments show that he suffered serious pain. This record supports that Plaintiff suffered a serious medical need.

The analysis therefore turns to the deliberate-indifference prong, and the initial question is whether Defendant knew of Plaintiff's serious medical need. *See Jett*, 439 F.3d at 1097. Defendant does not argue that he was unaware of Plaintiff's serious medical need. Further, in light of the medical records documenting Plaintiff's conditions, and Plaintiff's HNRs and reports of pain, the inference can be made that Defendant knew of Plaintiff's serious medical need.

The Court next examines whether Defendant's response to Plaintiff's serious medical need constituted deliberate indifference. *See Jett*, 439 F.3d at 1097. Defendant asserts that he was responsive to Plaintiff's HNRs regarding back pain and that from July 2017 to October 2018, he saw and examined Plaintiff regarding his back pain. (Doc. 26 at 5.) The medical records confirm that from July 2017 to October 2018, Defendant saw and examined Plaintiff for back pain; however, those records show that Defendant did not provide medication or treatment of any kind at the encounters during this period. *See Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) ("access to medical staff is meaningless unless that staff is competent and can render competent care"). The only record of any treatment prescribed by Defendant was on October 13, 2018, when he reordered Tylenol for Plaintiff; however, this order was discontinued without explanation. (Doc. 26-11 at 4.)

But Plaintiff's claim against Defendant is not that Defendant or medical staff were

deliberately indifferent when they failed to adequately treat his back pain; rather, Plaintiff specifically alleged that Defendant acted with deliberate indifference when he denied Plaintiff's request for a medical release from kitchen duty despite being aware of Plaintiff pain and suffering. (Doc. 1 at 4; Doc. 35 ¶¶ 3, 6, 8.) In his Response to Defendant's Motion, Plaintiff did not expand this claim. (*See* Docs. 34–35.) Plaintiff expressly stated that this case is not about medication; "Defendant makes it seem like Plaintiff was talking about Tylenol, this is not the case." (Doc. 35 ¶ 7.) Rather, Plaintiff explained the case was about the harm he suffered from standing and Defendant's denial of the request to be excused from kitchen duty due to the pain. (*Id.* ¶¶ 3, 5, 7–8.)

As to this specific claim, Defendant argues that there is no record to support Plaintiff's contention the he requested to be excused from kitchen duty due to back pain, and that within the HNRs that Defendant responded to, Plaintiff did not request to be excused from kitchen duty due to pain. (Doc. 26 at 5.) This argument is belied by the copy of Plaintiff's July 17, 2017 HNR, which specifically requests that he be taken off kitchen duty because standing hurts his back. (Doc. 34 at 5.)[2] And the medical records show that Defendant saw Plaintiff specifically in response to this HNR. (Doc. 26-2 at 1.) Defendant asserts, however, that there is no evidence he had the ability to adjust Plaintiff's work duties. (Doc. 26 at 5.) Defendant proffers no sworn statement or other evidence setting forth his responsibilities or showing that he was unable to grant a medical release from work duty, nor does Defendant proffer any competent evidence to refute that he was the one who denied Plaintiff's request. Defense counsel's argument suggesting that Defendant did not have the ability to adjust Plaintiff's work duties is not evidence. *See Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 593 n.4

---

[2] Of concern is defense counsel's assertion that "[w]ithin the HNRs that Defendant responded to, Plaintiff does not specifically request to be excused from his kitchen duties due to back pain." (Doc. 26 at 5.) The face of Plaintiff's July 17, 2017 HNR, which specifically requested to be taken off kitchen duty due to back pain from standing, shows it was received and responded to by medical; thus, this HNR was in control of Defendant and was available. (Doc. 34 at 5.) The Court reminds defense counsel of his obligations under Federal Rule of Civil Procedure 11(b) and the Local Rules. *See* Fed. R. Civ. P. 11(b)(4); LRCiv 83.1(f)(1)(A).

(9th Cir. 2002) ("arguments and statements of counsel are not evidence"). On this record, there is a question of fact whether Defendant denied Plaintiff's request to be excused from kitchen duty due to severe back pain caused by standing.

Nonetheless, even assuming Defendant improperly denied Plaintiff's request, this isolated incident does not amount to an Eighth Amendment violation. Generally, for an isolated incident to rise to deliberate indifference, it must be egregious in nature. *See McGuckin*, 974 F.2d at 1060–61 (repeated failure to properly treat a prisoner or a single failure that is egregious strongly suggests deliberate indifference); *Wood*, 900 F.2d at 1334 ("[i]n determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect"). "[T]he more serious the medical needs of the prisoner, and the more unwarranted the defendant's action in light of those needs, the more likely it is that a plaintiff has established 'deliberate indifference' on the part of the defendant." *McGuckin*, 974 F.2d at 1061.

Here, Plaintiff does not allege that he repeatedly requested and was repeatedly denied a medical release from kitchen duty; the record supports that he made one request on July 17, 2017. Making all inferences in Plaintiff's favor, in denying Plaintiff's request, Defendant failed to consider the extent of Plaintiff's pain or even disregarded Plaintiff's reports of pain. But this one-time decision in disregard of Plaintiff's pain was, at most, negligent or grossly negligent, or a misdiagnosis, none of which rises to deliberate indifference. *See Broughton*, 622 F.2d at 460; *Wood*, 900 F.2d at 1334; *Garcia v. Katukota*, 362 F. App'x 622, 622 (9th Cir. 2010) (unpublished) ("evidence of medical misdiagnosis and of a difference of medical opinion are insufficient to show deliberate indifference") (citing *McGuckin*, 974 F.2d at 1059). Although the record shows that in the months following Defendant's denial of Plaintiff's work-release request, Plaintiff suffered pain, the facts fail to support that his ongoing pain constituted a medical emergency stemming from the July 17, 2017 denial such that Defendant's decision could be considered so egregious or deficient as to amount to deliberate indifference. *Cf.*

*Rasmussen v. Skagit Cnty.*, 448 F. Supp. 2d 1203, 1207–08, 1211–12 (W.D. Wash. 2006) (even though the defendant doctor saw jail detainee just once before she died from sepsis due to Staphylococcus aureus pneumonia, because detainee was dead within mere days of the onset of symptoms, the fact that the defendant doctor "could not have stretched his allegedly deliberately indifferent provision of medical care over many months should not now preclude Plaintiffs' § 1983 claim"); *Rosen v. Chang*, 811 F. Supp. 754, 756, 760–61 (D. R.I. 1993) (where the defendant misdiagnosed the prisoner's stomach pains as an upset stomach when he was actually suffering from acute appendicitis, which caused his death, the facts permitted the inference that the defendant's examination "was so deficient as to manifest a purposeful indifference to [the decedent]'s needs. Courts are reluctant to raise a misdiagnosis to the level of a constitutional violation, but will do so when the . . . outcome of such a misdiagnosis [is] particularly glaring"). Plaintiff alleged that as a result of Defendant's denial, he received disciplinary tickets after he could no longer report to work due to his back pain. (Doc. 1 at 4.) This, too, fails to constitute a medical emergency or an outcome that would support a finding that Defendant's July 17, 2017 denial was egregious enough to implicate the Eighth Amendment.

In short, the facts do not evidence that Defendant's July 17, 2017 denial of Plaintiff' request to be excused from kitchen duty due to back pain amounted to deliberate indifference. Accordingly, the Court will grant summary judgment to Defendant as to this claim.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 26.)

(2) The Court's June 24, 2019 Order (Doc. 36), is **modified** to clarify that Plaintiff's filing at Doc. 34, titled "Motion for Summary Judgment," is construed as a Response to Defendant's Motion for Summary Judgment and should not be stricken.

. . . .

. . . .

(3) Defendant's Motion for Summary Judgment (Doc. 26) is **granted**.

(4) The Clerk of Court must enter judgment accordingly and terminate the action.

Dated this 30th day of January, 2020.

Michael T. Liburdi
United States District Judge